UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **THERESA RIVERA AND CHRISTOPHER RIVERA** | § § § | **CIVIL ACTION NO.: 19-cv-12616** |
| **VERSUS** | § § | **JUDGE:   EEF** |
| **WALMART, INC.** | § | **MAGISTRATE: DD** |

## REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, WALMART INC., ("Walmart") respectfully submits this Reply Memorandum in Support of its Motion for Summary Judgment (R. Doc. 21). Plaintiffs' Opposition (R. Doc. 42) fails to present competent evidence of the existence of a hazardous condition or notice to Walmart. Lacking proof, Plaintiffs attempt to invoke far-flung evidentiary presumptions and adverse inferences that are wildly speculative and as explained below, inapplicable. Accordingly, Plaintiffs cannot satisfy their burden of proof and Walmart is entitled to summary judgment.

**I.   Plaintiffs *Still* Have Not Met Their Burden of Proving That a Hazardous Condition Existed <u>or</u> That Walmart Had Actual or Constrictive Notice**

From the outset, Plaintiffs misstate the issues presented to the Court. Specifically, Plaintiffs erroneously claim that Walmart's Motion for Summary Judgment only seeks to dismiss Plaintiffs' claims on the basis that they have failed to prove Walmart had actual or constructive notice of an alleged hazardous condition before Mr. Rivera's fall, and that "no other element of proof under La. R.S. 9:2800.6 is at issue in this motion."[1] This is wrong – Walmart explicitly argued in its Motion for Summary Judgment that Plaintiffs' claims must be dismissed because, in addition to lack of actual or constructive notice, Plaintiffs have failed to produce any competent evidence that

---

1 R. Doc. 42 at p. 1.

a condition existed that presented an unreasonable risk of harm and caused Mr. Rivera's fall. Plaintiffs' attempt to re-frame and literally re-style[2] Walmart's motion underscores their desperation to evade discussion of the first prong of La. R.S. 9:2800.6.

To the issue of that first necessary element under La. R.S. 9:2800.6, Walmart notes that although Plaintiffs' Opposition includes hundreds of pages of exhibits and altered clips of the surveillance footage, Plaintiffs have *still* failed to produce any *competent* evidence to demonstrate that a hazardous condition existed. While Plaintiffs cite to a statement in part of the incident file where it is reported that Mr. Rivera stated he "slipped on something, but he is not sure what it was,"[3] that statement is inadmissible hearsay.[4] Moreover, even if it considered, it does not establish that a hazardous condition existed.[5]

Similarly, Plaintiffs point to a few excerpts from Mr. Rivera's medical records[6] which state that he "slipped," that he "slipped and fell," that he "slipped on water," that "he slipped on something," and that "there was something wet on the floor that caused him to fall."[7] Just as with the statement above, this material constitutes hearsay within hearsay – this time because each

---

[2] Plaintiffs styled their Opposition as a "Memorandum in Opposition to Defendant's Motion for Summary Judgment on Actual or Constructive Notice" (R. Doc. 42). However, Walmart's Motion for Summary Judgment was not titled in that manner and Walmart's motion addressed all of the elements Plaintiffs must prove under La. R.S. 9:2800.6. To be sure, Walmart's motion explicitly stated that Plaintiffs cannot prove that a condition existed that caused Mr. Rivera's fall. Plaintiffs' suggestion that Walmart is only seeking summary judgment based on lack of actual or constructive notice is completely without merit.
[3] See Plaintiffs' Opposition, R. Doc. 42, p. 12.
[4] Indeed, the statement is double-hearsay, or hearsay-within-hearsay, as it is a statement offered for the truth of the matter asserted and that was supposedly made by Mr. Rivera that is contained in an incident reporting document prepared outside of Court. F.R.C.P. Rule 801. Importantly, Plaintiffs bear the burden of proving the admissibility of hearsay statements under an exception, and they have not done so here. *See Bergeron v. Great W. Cas. Co.*, No. CIV.A. 14-13, 2015 WL 3505091, at *4 (E.D. La. June 3, 2015) citing *Malley v. Wal-Mart Stores, Inc.*, No. 1:12CV127-HSO-RHW, 2013 WL 2099917, at *2 (S.D. Miss. May 14, 2013) ("As the proponent of the proffered hearsay evidence, Plaintiff bears the burden of proving the applicability of an exception.")
[5] Simply alleging that Mr. Rivera slipped on "something" is insufficient to establish that a hazardous condition existed that caused his fall under La. R.S. 9:2800.6. Louisiana courts have consistently granted summary judgment when a plaintiff is unable to identify a specific hazardous condition that allegedly caused the accident. See *Bailey v. Fred's Stores of Tennessee Inc.*, 243 Fed. Appx. 850, 852 (5th Cir. 2007); *Broussard v. Retail Inv'rs of Tex., Ltd*, 123 So. 3d 912, 916 (La. App. 3d Cir. 2013); *Myles v. Cajun Operating Co.*, 2017 WL 8640923 (M.D. La. 2017).
[6] See Plaintiffs' Opposition, R. Doc. 42, p. 12.
[7] See Plaintiffs' Opposition, R. Doc. 42, p. 12.

contains Mr. Rivera's statements within a medical record. While Federal Rule of Evidence 803(4) provides a hearsay exception for statements in medical records "made for purposes of medical diagnosis or treatment," that exception applies *only* to the extent the statement was <u>necessary</u> for the physicians to treat the patient. For example, in *Rock v. Huffco Gas & Oil Co., Inc.*, details about the presence of grease or the rusted-out quality of a step were considered inadmissible even though they were in medical records because:

> "[t]he doctors stated that they only needed to know that [the plaintiff] had twisted his ankle; they did not need to know the additional detail that [the plaintiff] may have twisted the ankle while stepping through a rusted-out or defective step or by slipping in some grease in order to diagnose or treat Rock's injury." [8]

Here, as the proponent of the evidence, Plaintiffs bear the burden of proving that the statements they are seeking to introduce were made for the purposes of a medical diagnosis or treatment *and* were necessary for the physician to treat the patient to invoke the medical records hearsay exception. Yet, they have made no such showing. Nor can they, as Dr. Kevin Watson, Mr. Rivera's treating orthopedic surgeon, testified that it did not matter to him whether there was something "wet on the floor."[9] Accordingly, details such as there being "water" or that there was "something wet on the floor" or similar statements pulled from medical records should not be considered by this Court as the statements have not been shown to satisfy the hearsay exception. With those hearsay statements excluded, the Court is left with nothing more than statements to the effect that Mr. Rivera fell, or that he slipped and fell, none of which prove a hazardous condition.

Continuing, the admissible evidence in this case – namely, the testimony of various Walmart personnel – demonstrates unequivocally that there was no hazardous condition present. For example, Walmart associate William Perkins, who was stocking near the area where Mr.

---

[8] 922 F.2d 272, 278 (5th Cir.1991).
9 Exhibit A, Deposition of Dr. Kevin Watson, p. 12-14.

Rivera later fell, left the area at 9:46:15,[10] several minutes before Mr. Rivera's fall at 9:49:45. During that period between Mr. Perkins' departure and Mr. Rivera's fall, at least 8 customers walked very near the area where Mr. Rivera fell without incident. Then, at 9:50:00, or just 15 seconds after Mr. Rivera's fall, Mr. Perkins approached Mr. Rivera to check on him, and Mr. Perkins confirmed in his deposition that he did not see anything on the ground.[11]

Next, Walmart associate Shelia Acker arrived at the accident scene at 9:51:34, and she likewise testified that she did not see any water or debris on the floor.[12] The unidentified "broom lady" arrived at the scene a few seconds later at 9:51:40. While she stands near the scene holding a broom and a dustpan, her arms are spread far apart, and she does not appear to be sweeping or cleaning anything up, despite Plaintiffs' speculative suggestions otherwise. Then, at 9:51:55, about 20 seconds after the "broom lady" walked up to the incident area, Lucretia Taylor arrived at the scene. Just like William Perkins and Shelia Acker, Ms. Taylor testified that she did not see anything on the floor that could have caused Mr. Rivera's fall.[13]

In summary, Plaintiffs have presented no admissible, competent evidence that a hazardous condition existed and caused Mr. Rivera's fall. On the other hand, Walmart has presented positive, admissible testimony that makes clear Plaintiffs cannot carry their burden under La. R.S. 9:2800.6 of proving that a hazardous condition existed. Accordingly, Walmart is entitled to summary judgment as a matter of law on that basis alone.

## II.   Plaintiffs' Spoliation Theory is Improper and Not Supported by the Evidence

Plaintiffs' claims <u>also</u> should be dismissed because they cannot prove that Walmart had actual or constructive notice of any hazardous condition as required under La. R.S. 9:2800.6.

---

10 See timestamp on the surveillance footage attached as Exhibit A to Plaintiff's Opposition.
11 Exhibit A to Walmart's Motion for Summary Judgment at p. 59
12 Exhibit B to Walmart's Motion for Summary Judgment at p. 90.
13 Exhibit C to Walmart's Motion for Summary Judgment at p. 17.

Plaintiffs implicitly concede that they have no proof of notice in their Opposition, as they instead take the remarkable step of asking this Court for an adverse presumption based on a theory of spoliation. In sum, Plaintiffs argue that simply because the "broom lady" happened to arrive at the accident scene after Mr. Rivera's fall holding a broom and a dustpan, she must have swept up the substance that caused Mr. Rivera to fall, thus somehow depriving Plaintiffs of this "evidence." However, Plaintiffs' spoliation argument and request for an adverse presumption is improper, premised *entirely* on speculation and not supported by any of the undisputed facts and evidence in this case, and is therefore without merit.

To begin, Plaintiffs' entire spoliation argument is premised on incorrect law. Plaintiffs' long summary of the theory of spoliation under Louisiana state law is **not** the law applicable in this case because federal law, rather than state law, is controlling on the issue of spoliation as related to Plaintiffs' requested evidentiary presumption.[14] The Eastern District has consistently held that the imposition of the adverse presumption based on spoliation of evidence is a severe sanction. *Thomas v. Tangipahoa Par. Sch. Bd.*, No. CV 14-2814, 2016 WL 3542286, at *1 (E.D. La. June 29, 2016). As such, a showing of "**bad faith**" or "**bad conduct**" is required. *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quotation and citations omitted) (emphasis added). Thus, the party seeking the sanction must establish that "'(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) **the evidence was destroyed with**

---

14 "Federal courts apply state substantive law in diversity jurisdiction cases, but apply federal procedural law." *DP Solutions, Inc. v. Rollings, Inc.*, 353 F.3d 421, 427 (5th Cir. 2003): see also Fed. R. Civ. P. 1. Likewise, federal courts "apply federal evidentiary rules rather than state spoliation laws in diversity suits." *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005). "Evidentiary 'presumptions' which merely permit an adverse inference based on unproduced evidence are, likewise, controlled by federal law." *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003); *Willis v. Cost Plus, Inc.*, No. CV 16-639, 2018 WL 1319194, at *6 (W.D. La. Mar. 12, 2018).

5

**a culpable state of mind**; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."[15]

An adverse presumption based on spoliation is completely inappropriate in this case because Plaintiffs have failed to establish that the alleged evidence **even existed in the first place**. As discussed above, William Perkins, Shelia Acker, and Lucretia Taylor all arrived at the scene very shortly after Mr. Rivera's fall and testified that there was nothing on the ground.[16] Furthermore, Plaintiffs admit that the surveillance footage of Mr. Rivera's accident does not show any substances or liquids on the floor in the produce department where Mr. Rivera fell. In fact, Plaintiffs felt the need to attach additional edited surveillance footage and expressed their frustration in "**the poor quality of defendant's video system and its inability to capture any substances or liquids on the floor of the produce department**," even though the altered surveillance clips still **failed to show any liquid or substance on the floor**.[17]

Additionally, Plaintiffs' request calls for this Court to set aside basic reason. First, they ask this Court to assume that a woman with a <u>broom</u> – not a mop – *swept up water* but somehow left no trace for the various witnesses who have testified to see. Second, they ask the Court to

---

15 *Thermotek, Inc. v. Orthoflex, Inc.*, No. 3:11-CV-870-D BF, 2015 WL 4138722, at *12 (N.D. Tex. July 7, 2015) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 615-16 (S.D. Tex. 2010) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)) (citing *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-12 (2d Cir. 2001))) (emphasis added); accord *United States v. Garcia*, 596 Fed.Appx. 24, 26 (2d Cir. 2015), cert. denied, 136 S. Ct. 1532 (2016); *Blank v. Tomorrow PCS, L.L.C.*, No. CV 16-11092, 2018 WL 3136002, at *3 (E.D. La. June 27, 2018).
16 Exhibit A to Walmart's Motion for Summary Judgment at p. 59; Exhibit B to Walmart's Motion for Summary Judgment at p. 90, Exhibit C to Walmart's Motion for Summary Judgment at p. 17.
17 R. Doc. 42 at p. 3. Furthermore, as Plaintiffs admit that the surveillance footage clips attached to their Opposition as Exhibit B are altered. Exhibit C to Plaintiffs' Opposition, the Affidavit of Scott Newnam, states that the surveillance clips attached as Exhibit B are "zoomed in" and "slowed down." As such, the clips attached as Exhibit B constitute alterations of the original footage. Walmart submits that they are not competent summary judgment evidence and should not be considered by the Court, although even they do not show any substance on the ground and, consequently do not demonstrate that the "broom lady" swept up any substance in the area of the fall.

assume that the woman with the broom swept up this water despite the fact that Mr. Rivera *remained on the ground where he fell* moments earlier. Plaintiffs' requests are simply illogical.

Furthermore, Plaintiffs cannot point to any testimony from any of the witnesses at the accident scene that states that the "broom lady" cleaned anything up. To the contrary, every single person deposed with any recollection of this incident has stated there was nothing on the ground.

Courts have previously declined to apply an adverse presumption based on spoliation when the party seeking the presumption failed to prove that the allegedly destroyed evidence ever existed in the first place. *See Willis v. Cost Plus, Inc.*, No. CV 16-639, 2018 WL 1319194, at *6 (W.D. La. Mar. 12, 2018) ("Plaintiff has made no showing that Defendant destroyed surveillance video of the incident for the purpose of hiding adverse evidence. Indeed, **Plaintiff has not shown such evidence ever existed.**") (Emphasis added). Here, Plaintiffs have failed to prove that the "evidence" existed, and their request that the Court make quantum leaps and ignore logic to arrive at the presumption is simply not supported by the law. Accordingly, Plaintiffs are not entitled to an adverse presumption based on spoliation and cannot use rank speculation and guesswork to avoid summary judgment in this matter.

Lastly, even assuming *arguendo* that Plaintiffs could show that the "broom lady" swept up a substance at the accident scene that caused Mr. Rivera's fall, which Walmart expressly denies, Plaintiffs still cannot prevail on a spoliation argument because Plaintiffs have presented no evidence that the "broom lady" allegedly destroyed the substance with a **culpable state of mind**. It is well established in the Fifth Circuit that "'[m]ere negligence is not enough [to impose an adverse presumption based on spoliation], for it does not sustain an inference of consciousness of a weak case.'"[18] Accordingly, the evidence must show that a party had a dishonest, deceptive or

---

18 *Moss v. Alcorn Cnty.*, No. 1:13-CV-00167-SA-DAS, 2015 WL 419655, at *4 (N.D. Miss. Feb. 2, 2015) (quoting *Vick v. Tex. Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)) (emphasis added).

culpable state of mind for the court to find that the party acted in bad faith. *Thomas v. Tangipahoa Par. Sch. Bd.*, No. CV 14-2814, 2016 WL 3542286, at *2 (E.D. La. June 29, 2016).  Here, Plaintiffs have presented absolutely no testimony, affidavits, or other evidence that even begins to suggest that Walmart or any of its employees acted in bad faith or otherwise acted with a dishonest, deceptive, or culpable state of mind.  Plaintiffs' argument for an adverse presumption based on spoliation is therefore without merit.

### III.     The "Uncalled Witness Rule" Does Not Apply

Finally, in furtherance of their efforts to avoid the clear requirements and burden of proof imposed by La. R.S. 9:2800.6, Plaintiffs argue that they are entitled to some undefined presumption regarding the "broom lady's" activities due to the "uncalled witness rule."  The uncalled witness rule provides that "if a party has it peculiarly <u>within his power</u> to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Herbert v. Wal–Mart Stores, Inc.,* 911 F.2d 1044, 1047 (5th Cir.1990) (emphasis added) (quoting *Graves v. United States,* 150 U.S. 118, 14 S.Ct. 40, 37 L.Ed. 1021 (1893)).[19]  However, the uncalled witness rule creates only an inference, rather than a presumption, as incorrectly suggested by Plaintiffs. See *Hardy v. Shell Chem. Co.*, 693 F. Supp. 2d 611, 623 (E.D. La. 2010).

The facts of this case, including the history of discovery in this matter, demonstrate the total inapplicability of the uncalled witness rule.  At the outset, Walmart has undertaken the following investigative efforts to identify the "broom lady":

---

19 Although in Herbert the Fifth Circuit opined that the rule was archaic and should have "no place in federal trials conducted under the Federal Rules of Evidence and the Federal Rules of Civil Procedure," the court observed that it was bound by precedent and, as such, the rule still applied in the Fifth Circuit. 911 F.2d at 1047.

- 8 current and former Walmart associates who were working on the day of the incident were deposed and testified that they did not know the identity of the "broom lady."[20]

- Walmart provided Plaintiffs with the list of all 90 female employees who worked at the subject store on April 5, 2019, between the hours of 8 a.m. and 3 p.m.,[21] a time span which includes the subject accident which happened on that date at approximately 9:49 a.m.

- Desmond Zeno, the store's Manager, reviewed the surveillance footage of the incident and could not identify the "broom lady."[22]

- Additionally, Mr. Zeno and Max Pierre, Assistant Manager, reviewed the surveillance footage along with a list of female employees working on the morning of the subject incident. Through that process, they developed a list of 8 current and former employees who, based on characteristics such as physical appearance, could not be excluded as potentially being the "broom lady." Walmart's counsel provided this list to Plaintiffs' counsel.[23]

- Armed with this list, Plaintiffs filed a Motion to Continue this Motion for Summary Judgment (R. Doc. 22). In fact, Plaintiffs specifically stated that they required more time to respond to this Motion for Summary Judgment to depose Verellda Barra, Brandi Guyton, and Diamond Scott, three female associates disclosed to Plaintiffs as former employees who could not be excluded as possibly being the "broom lady."

---

20 Exhibit B, Deposition of Ernest Everidge, p. 30; Exhibit C, Deposition of Brenda Kay, p. 26; Exhibit D, Deposition of William Perkins, p. 48; Exhibit E, Deposition of Shelia Acker, p. 19; Exhibit F, Deposition of Dwayne Dantzler, p. 11-12; Exhibit G, Deposition of Lucretia Taylor, p. 54; Exhibit H, Affidavit of Ashante Martin; Exhibit I, Affidavit of Raven Thomas.
21 Exhibit J, Walmart's Answers to 3rd Set of Interrogatories and Responses to Requests for Admissions, Answer to Interrogatory No. 2.
22 Exhibit K, Deposition of Desmond Zeno, at p. 55.
23 Exhibit L, September 30, 2020 correspondence to Plaintiffs' counsel.

- This Court granted Plaintiffs' Motion and continued the submission deadline on this Motion for Summary Judgment from December 2, 2020 to February 5, 2021 (R. Doc. 27). Yet, **Plaintiffs never deposed Verellda Barra, Brandi Guyton, and Diamond Scott**.

As the above timeline makes clear, Walmart has fully cooperated in efforts to identify the broom lady. Indeed, to the extent the "broom lady" was a Walmart employee, Walmart has provided her name to Plaintiffs. Thus, there can be no valid argument that she has not been "made available" to Plaintiffs so as to invoke the uncalled witness rule.

Moreover, the uncalled witness rule does not apply where the witness in question is equally available to both parties. *Francois v. Diamond Offshore Co.*, No. CIV.A. 11-2956, 2013. WL 796728, at *2 (E.D. La. Feb. 26, 2013). Plaintiffs, who are seeking to invoke the uncalled witness rule, necessarily have the burden of proving its application. Yet, the Eastern District has specifically held that former employees are equally available witnesses and that the invocation of the uncalled witness rule against the former employer is not appropriate.[24] Here, Plaintiffs have presented no proof whatsoever that the "broom lady" is a current Walmart employee. She therefore *cannot* be considered to be under Walmart's control, and the uncalled witness rule cannot apply.

## IV.   CONCLUSION

For the foregoing reasons, and the reasons stated in Walmart's Memorandum in Support, this Court should grant Walmart's Motion for Summary Judgment and dismiss Plaintiffs' claims against it with prejudice, at Plaintiffs' cost.

---

24  See *Francois v. Diamond Offshore Co.*, No. CIV.A. 11-2956, 2013 WL 796728, at *2 (E.D. La. Feb. 26, 2013) ("As these witnesses are former Diamond employees, they are equally available to Plaintiff. Plaintiff could have deposed these persons or subpoenaed them for trial, but has not done so. As a result, the Court will not instruct the jury that any negative inference is to be drawn from Diamond's failure to call them at trial.").

Respectfully submitted,

*/s/P. SINNOTT MARTIN*
ROY C. BEARD (#17461) (rcb@mcsalaw.com)
QUINCY T. CROCHET (#30457) (qtc@mcsalaw.com)
P. SINNOTT MARTIN (#37218) (psm@mcsalaw.com)
MCCRANIE, SISTRUNK, ANZELMO, HARDY
McDANIEL & WELCH
909 Poydras Street, Suite 1000
New Orleans, La. 70112
(504) 831-0946
**ATTORNEYS FOR DEFENDANT, WALMART INC.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel by operation of the Court's electronic filing system this 5TH day of February, 2021.

*/s/P. SINNOTT MARTIN*